**Stephen J. ROY and Karen Miller, Plaintiffs,**

v.

**Walter COHEN, et al., Defendants.**

**Civ. No. 83–1179.**

United States District Court, M.D. Pennsylvania.

June 22, 1984.

Franklin A. Miles, Jr., Harrisburg, Pa., Gary S. Gildin, Carlisle, Pa., for plaintiffs.

Harry A. Nagle, Lewisburg, Pa., Joel M. Ressler, Deputy Atty. Gen., Harrisburg, Pa., Theodore C. Hirt, Lewis K. Wise, U.S. Dept. of Justice, Civ. Div., Elizabeth A. Allaben, U.S. Dept. of Agriculture, Washington, D.C., Gwen Jones, Social Security Administration, Baltimore, Md., for defendants.

## OPINION

MUIR, District Judge.

### I. Introduction.

Stephen J. Roy and Karen Miller refuse to use a social security number for their three-year-old daughter, Little Bird of the Snow, on the ground that doing so would be contrary to their native Abenaki Indian religious beliefs. As a result, the Defendants have terminated cash assistance and medical assistance benefits for Little Bird of the Snow payable to the Plaintiffs. They have also initiated proceedings to discontinue food stamps for Little Bird of the Snow. In this lawsuit, the Plaintiffs assert that the Defendants' refusal to provide them welfare benefits to which they would be entitled but for their failure to use a social security number for Little Bird of the Snow constitutes a violation of their right to free exercise of their religion under the first amendment to the United States Constitution. Defendant Margaret Heckler is the Secretary of the United States Department of Health and Human Services (HHS). Defendant John Block is the Secretary of the United States Department of Agriculture (USDA). Defendant Walter Cohen is the Secretary of the Pennsylvania Department of Public Welfare (DPW). This case was tried by the Court sitting without a jury from May 17 through May 22, 1984. The following are the Court's findings of fact, discussion, and conclusions of law.

### II. Findings of Fact.

1. Plaintiff Stephen J. Roy is an Abenaki Indian.

2. Mr. Roy's great-grandfather on his father's side was a tribal chief in an Abenaki tribe.

3. Mr. Roy's grandfather on his father's side was a full blooded Native American Abenaki.

4. Mr. Roy is registered as a Native American Indian with the Three Rivers Council.

5. Karen Miller is the wife of Stephen J. Roy.

6. Defendant Walter Cohen is Secretary of the Pennsylvania Department of Public Welfare ("DPW").

7. As Secretary of the Pennsylvania Department of Public Welfare, Defendant Cohen has overall responsibility for administration in Pennsylvania of the federal-state programs of Aid to Families with Dependent Children, 42 U.S.C. § 601, et seq., Medical Assistance to families with dependent children, 42 U.S.C. § 1396 et seq., and food stamps to low-income households, 7 U.S.C. § 2011, et seq.

8. Defendant Margaret Heckler is Secretary of the United States Department of Health and Human Services ("HHS").

9. As Secretary of HHS, Defendant Heckler has overall responsibility for administration of the federal-state programs of Aid to Families with Dependent Children and Medical Assistance to families with dependent children.

10. Defendant John Block is the Secretary of the United States Department of Agriculture ("USDA").

11. As Secretary of the U.S. Department of Agriculture, Defendant Block has overall responsibility for administration of the federal-state program of Food Stamps to low-income households.

12. In 7 U.S.C. § 2025(e) and 42 U.S.C. § 602(a)(25), Congress has specified that

households participating in the federal food stamp program and the Aid to Families with Dependent Children program furnish the Social Security Number ("SSN") of each member of the household.

13. Applicable regulations of both HHS and USDA (7 C.F.R. § 273.6; 42 C.F.R. § 232.10) reiterate that requirement which has been followed by the Commonwealth of Pennsylvania Department of Public Welfare.

14. Stephen J. Roy and Karen Miller have two children, Renee, age five, and Little Bird of the Snow, age three.

15. The Plaintiffs adhere to Native American tradition and culture and the religious beliefs embodied in that tradition and culture.

16. The Plaintiffs observe several cultural practices which have their foundation in Native American belief.

17. The marriage of Karen Miller and Stephen J. Roy was accomplished in accordance with Native American custom.

18. Mr. Roy and Ms. Miller are raising their children in accordance with Native American tradition and religious beliefs.

19. Renee and Little Bird of the Snow Roy are enrolled on a Native reservation.

20. Little Bird of the Snow was so named during a traditional Indian ceremony performed by Roy and his elder daughter Renee after the birth of Little Bird of the Snow. In this ceremony, Roy and Renee buried Little Bird of the Snow's placenta (so that her "spirit could take root"), said a prayer over it, and named Little Bird of the Snow upon seeing a "sign"—a small goshawk that appeared to emerge from the snow.

21. Little Bird of the Snow Roy was born at the Williamsport Hospital, Williamsport, Pennsylvania on December 28, 1980.

22. Shortly after the birth of Little Bird of the Snow, her mother, Karen Miller, signed an application for a social security number for Little Bird of the Snow which was then submitted to the Social Security Administration by personnel at the hospital. Miller signed the application without Steven Roy's knowledge.

23. Following receipt of the application, the Social Security Administration established a social security number for Little Bird of the Snow and mailed a social security card for Little Bird of the Snow to Plaintiffs Roy and Miller.

24. When Roy received the social security card for Little Bird of the Snow, he questioned Karen Miller about it and Miller stated that she did not recall signing the application form. Roy and Miller then agreed to and did return the social security card to the Social Security Administration. Roy requested that the Social Security Administration "revoke" the social security number established for Little Bird of the Snow. He was advised that Little Bird of the Snow's social security number would remain "dormant."

25. Little Bird of the Snow's social security number has been provided by the Social Security Administration to the Internal Revenue Service and has been entered in the Social Security Administration's earnings file.

26. To date, no use has been made of Little Bird of the Snow's social security number.

27. Plaintiff Roy sincerely believes that the government's use of the social security number established for Little Bird of the Snow will "rob the spirit" of Little Bird of the Snow and will prevent him from fully "preparing her for greater power."

28. Plaintiff Roy sincerely believes that a social security number is part of a "great evil" as contained in Native American legend.

29. Roy's view is that the great evil— "as described in the legend of Katahdin"— results from the merging together of three different but related evils. One of these evils is the widespread use of computers. Another of these evils is people's casual acceptance of the widespread use of computers. The third evil is the proliferation of weaponry which increasingly employs

computer technology, thereby making the use of the weapons to kill people a "sterile" act.

30. Abenaki religious tradition holds that control over one's life is essential to spiritual purity and indispensable to "becoming a holy person."

31. Roy sincerely believes that the decision of whether or not to use a social security number for Little Bird of the Snow must be made by Little Bird of the Snow.

32. Mr. Roy's objection to the use of a Social Security Number for Little Bird of the Snow is consistent with and supported by the religious teachings of Native Americans in general.

33. Roy believes that the establishment of a social security number for Little Bird of the Snow, without more, has not "robbed her spirit," but widespread use of the social security number by the federal or state governments in their computer systems would have that effect.

34. On January 1, 1982, Stephen J. Roy began receiving cash assistance and medical assistance for himself and his two daughters, Renee and Little Bird of the Snow. This assistance was provided by DPW and HHS pursuant to the federal-state programs of Aid to Families with Dependent Children and Medical Assistance to Families with Dependent Children.

35. On April 27, 1982, DPW personnel advised Mr. Roy that he had failed to provide a social security number for Little Bird of the Snow.

36. DPW personnel stated that a social security number is required by federal and state statutes and regulations as a condition of eligiblity for assistance for Little Bird of the Snow.

37. Mr. Roy offered to cooperate in finding an alternative to obtaining a social security number for Little Bird of the Snow Roy in order to restore her welfare benefits.

38. DPW personnel refused to consider any alternatives to requiring a social security number for Little Bird of the Snow.

39. Mr. Roy refused to furnish a social security number for Little Bird of the Snow on the ground that doing so would be contrary to his religious belief.

40. On September 17, 1982, Mr. Roy's cash assistance under Aid to Families with Dependent Children was reduced because DPW held Little Bird of the Snow to be ineligible for benefits. Similarly, DPW discontinued medical assistance for Little Bird of the Snow. The sole basis for these actions was Mr. Roy's refusal to furnish a social security number for Little Bird of the Snow.

41. On June 16, 1983, DPW held a hearing on Mr. Roy's appeal from the reduction of cash assistance and discontinuance of medical assistance for Little Bird of the Snow.

42. On July 28, 1983, the DPW Hearing Examiner held that Mr. Roy's refusal to provide a social security number for Little Bird of the Snow was based upon a religious belief which is sincerely held but ordered Mr. Roy's appeal denied and refused to restore the cash assistance or medical assistance for Little Bird of the Snow.

43. DPW affirmed the order of the Hearing Examiner on July 29, 1983.

44. Except for his refusal to provide a social security number for Little Bird of the Snow, Mr. Roy has met all the requirements for eligibility for cash assistance and medical assistance for Little Bird of the Snow at all times since January 1, 1982.

45. Mr. Roy and Ms. Miller continue to refuse to furnish a social security number for Little Bird of the Snow.

46. In September, 1982, Mr. Roy was denied $33 and since October, 1982, Mr. Roy has been denied $66.00 per month as a result of DPW's discontinuance of Little Bird of the Snow from cash assistance.

47. Since September 17, 1982, Mr. Roy has paid $40.50 for medical and dental care for Little Bird of the Snow.

48. If DPW had not discontinued Little Bird of the Snow from medical assistance, these expenses would have been paid by DPW and HHS.

49. Stephen J. Roy and Karen Miller have been receiving Food Stamps from DPW and USDA pursuant to the federal-state program of Food Stamps to low-income households.

50. On or about May 26, 1983, DPW advised Mr. Roy and Ms. Miller that it intends to discontinue food stamps for Little Bird of the Snow because they failed to furnish a social security number for Little Bird of the Snow. DPW personnel asserted that a social security number is required by federal and state statutes and regulations as a condition of eligibility for food stamps for Little Bird of the Snow.

51. Except for their refusal to provide a social security number for Little Bird of the Snow, Mr. Roy and Ms. Miller meet all the requirements for eligibility for Food Stamps for Little Bird of the Snow.

52. Mr. Roy and Ms. Miller are required to provide their social security numbers as a condition of receiving food stamps for Little Bird of the Snow.

53. Mr. Roy and Ms. Miller provided their own social security numbers when they applied for food stamps for Little Bird of the Snow.

54. Mr. Roy's continued refusal to furnish a social security number for Little Bird of the Snow is based upon sincerely held Abenaki religious beliefs.

55. The government requires a social security number as a condition of receiving welfare benefits in order to prevent fraud.

56. The social security number is an important tool of federal and state agencies to reduce the misdirection of benefits in the food stamp and AFDC programs.

57. Analyses done by HHS and USDA confirm that there exist significant fraud and overpayments in these benefits programs.

58. The error rate for incorrect payments in the AFDC and Food Stamps programs is currently between five and ten percent.

59. Studies by HHS indicate overpayments of $25,000,000 on an annual basis while USDA has estimated that, in fiscal year 1981, $1,000,000,000 in benefits were attributable to payments to persons ineligible for the program and overpayments to eligible persons.

60. The efficient operation of these programs requires the use of computer systems that utilize unique numerical identifiers such as the social security number.

61. The social security number has become a very important part of the efforts of states to administer their welfare programs effectively through computerized record systems.

62. Such systems ensure greater accuracy in providing benefits and in reducing fraud in such programs and aid in the coordination of information in various welfare programs to ensure that recipients are not receiving duplicate benefits.

63. Social security numbers are used in making the determination that benefits in the programs are properly paid and that there is no duplication of benefits or failure of payment.

64. Utilization in the computer system of the name of a benefit recipient alone frequently is not sufficient to ensure the proper payment of benefits.

65. Social security numbers provide a basis for differentiating among program recipients with the same or similar names.

66. Social security numbers serve this purpose well because they are unique identifiers.

67. The Social Security system has data on over 383,000,000 accounts.

68. As of October 11, 1983, the computer system had a record of 55,036 persons with the surname Roy and of 32 persons with the name Stephen Roy.

69. The use of computer "cross-matching" can significantly reduce erroneous payments in these programs.

70. Social security numbers are very useful for program cross-matching.

71. Requiring social security numbers for children enhances the agencies' ability to detect non-existent children on the basis

of cross-matches with school enrollment and other files.

72. Social security numbers also are helpful in carrying out the WIN (work incentive) and Child Support programs and the work registration and workfare provisions of the food stamp programs.

73. A demonstration of eligibility for food stamps can affect a household's eligibility for benefits in six other nationwide meal programs administered by USDA.

74. Without the provision of social security numbers in these programs, cross-matching would be more difficult to perform.

75. The file on a particular benefit recipient can be identified, and cross-matching performed, if the benefit recipient's full name, date of birth, and parents' names are entered into the computerized systems.

76. Certain computer systems used by the Defendants also allow for the entry of additional information to identify a particular benefit recipient, including the benefit recipient's parents' social security numbers and the recipient's place of birth.

77. The government's interest in preventing Little Bird of the Snow from fraudulently receiving welfare benefits can be satisfied without requiring a social security number for Little Bird of the Snow.

78. Mr. Roy was and is required to provide his own social security number as a condition for receiving the cash grant and medical assistance for Little Bird of the Snow.

79. Mr. Roy agreed to provide his own social security number when he applied for the cash grant and medical assistance for Little Bird of the Snow.

80. Little Bird of the Snow's name and birthdate were entered into the computers which DPW, HHS and USDA use to determine eligibility for welfare benefits.

81. There are no other persons named Little Bird of the Snow Roy or Little Bird of the Snow whose names are in the computer which DPW uses to determine eligibility for welfare benefits.

82. Even if there were other persons in the computer who share her name, information on Little Bird of the Snow could be rapidly located in most if not all of the existing computer systems by searches or comparisons of birthdates and parents' names and addresses.

83. There have been four reported cases involving challenges to the social security number requirement for welfare benefits based upon the contention that the number violates sincerely held religious beliefs of the welfare recipient.

84. Exempting Little Bird of the Snow from the social security number requirement would require no modifications to the Defendants' computer systems, would require at the most some minor extra expenditure of time by the Defendants' employees and would require no discrete financial expenditure.

85. The Defendants' interest in maintaining an efficient and fraud resistant system can be met without requiring use of a social security number for Little Bird of the Snow.

86. As a result of the Defendants' denial of benefits to Little Bird of the Snow, the Plaintiffs and their children have been living at a near-subsistence level.

### III. Discussion.

Little Bird of the Snow received her name in a traditional Native American Indian ceremony performed by Plaintiff Roy after the birth of Little Bird of the Snow. In this ceremony, Roy and his elder daughter Renee buried Little Bird of the Snow's placenta (so that her "spirit could take root"), said a prayer over it, and named Little Bird of the Snow upon seeing a "sign"—a small goshawk that appeared to emerge from the snow. Plaintiff Roy believes that Little Bird of the Snow's name is sacred. He also believes that government use of a social security number for Little Bird of the Snow will "rob her spirit."

Upon consideration of the parties' arguments and the evidence presented at trial, we reach the following conclusions. First,

this case is not moot as claimed by the Defendants. Second, Roy's objection to use of a social security number for Little Bird of the Snow derives from sincerely held religious beliefs. Third, while the government's interest in requiring individuals to use a social security number is great, that interest is "outweighed" by Roy's rights under the first amendment. Stated otherwise, the governmental interests served by the social security number requirement will not be significantly compromised by exempting Little Bird of the Snow from the requirement in this case.

A. Mootness.

Prior to trial, the parties agreed that Little Bird of the Snow did not have a social security number. *See* Comprehensive Statement of Undisputed Facts (filed May 7, 1984) ¶ 6. On the last day of the trial of this case, however, one of the Defendants' witnesses, an official of the Social Security Administration, determined that Little Bird of the Snow has a social security number. Following this somewhat surprising discovery, the Defendants argued that this case is moot and this Court therefore has no jurisdiction to address the Plaintiffs' claims.

The Defendants contended that the case is moot because the Plaintiffs sought in this suit to avoid the requirement that they provide a social security number for Little Bird of the Snow as a condition of receiving welfare benefits for her but, because a social security number for Little Bird of the Snow already exists, the Plaintiffs can no longer legitimately claim any objection to providing the social security number in order to receive welfare benefits.

The Defendants' argument mischaracterizes the nature of the Plaintiffs' claim. Roy believes that an individual's use of a social security number in modern American society "robs" that individual's spirit and deprives him to some extent of the ability to attain "greater power." He believes that once an individual's social security number is used, the spirit of that individual is robbed and the damage to the individual cannot be undone. Roy testified that he

used his social security number before he "became aware"—developed his beliefs—and, as a result, his spirit has been robbed and it would be pointless for him now to object to use of his social security number. Indeed, Roy provides his social security number to the Defendants in connection with his receipt of welfare benefits, as does Plaintiff Karen Miller. The Plaintiffs also provide their daughter Renee's social security number to the Defendants in order to receive welfare benefits for Renee.

Notwithstanding the above, Roy sincerely believes that the spirit of Little Bird of the Snow has not been robbed by the mere establishment of a social security number for her. He further believes that no substantial harm will befall Little Bird of the Snow until her social security number is "used". Likewise, while Roy would prefer that no social security number had ever been established for Little Bird of the Snow, he still feels compelled by his religious belief to avoid any use of that number and, to that end, has refused to provide the number to the Defendants in order to receive welfare benefits for Little Bird of the Snow. The Plaintiffs desire to obtain welfare benefits without the government using Little Bird of the Snow's social security number in connection with any information maintained by the government regarding Little Bird of the Snow. The Plaintiffs also seek to have Little Bird of the Snow's social security number "expunged" to whatever extent that is possible.

█ In light of the foregoing, we reject the Defendants' argument that this case is moot.

█ On June 15, 1984, the federal defendants and Defendant Cohen filed posttrial motions to dismiss this case in which they reiterate their argument that this case is moot and make the related argument that the Plaintiffs are not entitled to injunctive relief because they misrepresented a material fact and therefore have "unclean hands." The Defendants maintain that the Plaintiffs represented that Little Bird of the Snow has no social security

number whereas, in fact, she does. We reject this argument for several reasons. The fact that Little Bird of the Snow was assigned a social security number is not material for the same reason that this case is not moot. Plaintiff Roy does not in this lawsuit object to the establishment of a social security number for Little Bird of the Snow but he does object to extensive governmental use of that number and to the requirement that he provide the number to the Defendants in order to obtain benefits for Little Bird of the Snow. Neither the Plaintiffs' complaint nor their statement of material facts submitted with their summary judgment motion states that no social security number has been established for Little Bird of the Snow. Likewise, both the complaint and the statement of material facts make it clear that the Plaintiffs object to *providing* a social security number for Little Bird of the Snow in order to obtain benefits for her.

The Defendants also point out that the Plaintiffs agreed to the "undisputed fact" that Little Bird of the Snow has no social security number. The federal Defendants are equally responsible if not more responsible for this misstatement. The Defendants agreed to the facts contained in the parties' Comprehensive Statement of Undisputed Facts. The federal Defendants had the ability to confirm or deny the "fact" that Little Bird of the Snow had no social security number and they did not do so until the last day of the trial of this case. It is incredible that the federal Defendants failed to make a simple and quick check of their records to ascertain the existence of the number.

B. Roy's "Religious" Belief.

The Defendants argue that the Plaintiffs' objection to the social security number requirement does not derive from any "religious" belief and therefore is not entitled to First Amendment protection. *See United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). The Defendants argue that, although Plaintiff Roy claims that his beliefs derive from his Abenaki Indian background, many of his beliefs are not purely Abenaki beliefs and therefore cannot properly be characterized as religious. For example, the Plaintiffs' expert, Professor Drinnon, testified that many of Roy's beliefs and practices are common to many Native American Indian tribes. We fail to see how the fact that a belief is common to many Native American tribes changes the fact that the belief is an Abenaki religious belief.

The Defendants also argue that the Plaintiffs' objection is philosophical rather than religious in nature. The Defendants point out that many individuals object to the widespread use of identifying numbers and that their objections are characterized as philosophical. Nevertheless, Roy traced his objection to the social security number requirement directly to the legend of "Katahdin" which clearly is a part of Native American Indian tradition or "religion." Roy and his expert also testified that Native American Indians do not make a distinction between religion, culture, and what most Americans call "philosophy."

The Defendants also claim that the Plaintiffs' objection to the social security number requirement is not truly religious because it is, for various reasons, irrational. A belief need not be rational in order to be a religious belief entitled to first amendment protection. *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). Roy's beliefs are not any more irrational than most religious beliefs. Moreover, after hearing Roy's testimony regarding his objection to the use of the social security number and the beliefs from which that objection derives followed by the testimony presented by the Defendants regarding their use of the social security number and extensive reliance on computer technology, we are not convinced that Roy's beliefs are, in fact, irrational. For all of the foregoing reasons, we conclude that the Plaintiffs' objection to use of a social security number for Little Bird of the Snow derives from beliefs that are properly characterized as "religious."

## C. The Plaintiffs' Sincerity.

■ We are persuaded that Plaintiff Roy sincerely holds the religious beliefs that underlie his objection to the social security number requirement. This conclusion is based primarily on our determination that Roy's testimony that he sincerely holds his beliefs is credible. Moreover, Roy testified to numerous objective manifestations of the sincerity of his beliefs including the ceremony in which Little Bird of the Snow was given her name and the Plaintiffs' efforts to raise their children in accordance with Native American Indian tradition. Finally, the fact that Roy has foregone $66.00 per month in cash assistance for Little Bird of the Snow since October 1982, as well as other benefits despite the fact that the Plaintiffs have very little income strongly suggests that they are sincere in their religious beliefs.

The Defendants point to the fact that Roy is not completely "consistent" in his religious practices. Assuming this to be true, it does not change the fact that Roy sincerely holds the religious beliefs that give rise to his objection to the social security number. Roy lives in a modern society with which American Indian tradition is, in many respects, at odds. He does not reject the modern society in which he lives as the Defendants apparently would have him do in order to be entitled to first amendment protection. Roy does attempt to live in this society while maintaining his traditional religious beliefs and practices and he apparently does so with considerable success.

■ With regard to Plaintiff Karen Miller, because she did not testify at the trial of this case, we are unable to determine whether she sincerely holds religious beliefs identical or similar to those held by Mr. Roy. Plaintiff Miller does not claim that she has been denied cash assistance for Little Bird of the Snow but she contests Defendants Block and Cohen's threatened termination of food stamps for Little Bird of the Snow. We are hesitant to grant Miller injunctive relief against the threatened termination of food stamps in light of her failure to testify at trial. Neverthe-less, it would be inequitable to hold that Plaintiff Roy need not provide a social security number for Little Bird of the Snow while allowing the government to require Miller to provide a social security number for Little Bird of the Snow, thereby effectively denying Roy the relief he seeks. In other words, because Roy and Miller jointly receive food stamps for Little Bird of the Snow, we think that proof that Roy has a sincere religious objection to providing a social security number for Little Bird of the Snow supports an injunction against Defendants Block and Cohen from terminating food stamps for Little Bird of the Snow to the same extent as would a finding that both Plaintiffs hold sincere religious objections to the requirement.

## D. The Government's Interest.

■ There is no question that the government's interest in utilizing computer systems in connection with the payment of welfare benefits is substantial. Likewise, the government's interest in requiring that benefit recipients provide a social security number in order to facilitate accurate and efficient identification of those recipients is substantial. *See Callahan v. Woods*, 736 F.2d 1269, 1274 (9th Cir.1984). Use of the social security number in connection with the various welfare programs enhances the programs' efficiency and helps to reduce the tremendous problem of mispayment of benefits by the agencies involved.

## E. Resolution of the Conflict Between the Parties' Interests.

### 1. The Appropriate Test.

The parties dispute the standard by which this Court is to determine whether the Plaintiffs' interest in acting in accordance with their religious beliefs by refusing to provide a social security number in order to receive welfare benefits is superior to the government's interest in requiring all welfare benefit recipients to provide a social security number. In our May 15, 1984, opinion on the parties' summary judgment motions, we relied primarily on the decision

of the Court of Appeals for the Ninth Circuit in *Callahan v. Woods*, 736 F.2d 1269 (9th Cir.1984) in which the Court of Appeals employed the "compelling state interest—least restrictive alternative" test. The Defendants maintain that the standard that should be used in deciding this case is not the compelling interest—least restrictive alternative test, but a "weighing" or "balancing" test. The parties also dispute just what interests are to be considered in determining the outcome of the case.

■ The Plaintiffs advocate strict adherence to the least restrictive alternative test. In other words, unless the government can show that its interests cannot be served by any means less restrictive of the Plaintiffs' first amendment rights, the Plaintiffs should prevail. We reject this analysis because we do not believe that the Plaintiffs should prevail if some "less restrictive alternative" is available to the government that would involve an unreasonable cost. In our May 15, 1984, opinion we held that the Plaintiffs could prevail on their free exercise claim only if they could show that the governmental interests served by the social security number requirement could be served by some *reasonable* alternative means which would not burden the Plaintiffs' first amendment rights. In other words, if holding that the Plaintiffs,' objection to the social security number requirement entitles them to an exemption from the requirement would substantially burden the benefit programs involved in this case by, for example, involving a cost so great that the efficient operation of the programs would be effected or by creating a substantial likelihood of chaos in the system resulting from a proliferation of claims to exemptions from the requirement, then the governments' interest should be held superior to the Plaintiffs' right to exercise their religious beliefs.

■ The Defendants argue that so long as the government's interest in maintaining the social security number requirement is "weighty" enough, the Defendants must prevail. The Defendants argue that the government's general interest in maintaining the social security number requirement is all that need be considered and the government's interest in maintaining the requirement in this particular case is, in effect, not relevant. Likewise, the Defendants maintain that the government should prevail in this case because it has a substantial interest in uniform enforcement of the social security number requirement and that granting an exception to the requirement in this case will adversely impact the government's substantial interest in maintaining uniformity. We reject this argument as well because it would effectively guarantee victory for the government in every case. It is obvious that the government has a strong interest in uniform enforcement of all laws and regulations. The analysis advocated by the Defendants is inconsistent with the First Amendment's requirement that exceptions to an otherwise uniformly enforced law be made in those exceptional cases where the law conflicts with an individual's sincerely held religious beliefs. See *Callahan v. Woods*, 736 F.2d at 1272–1273 (9th Cir.1984).

The Defendants rely on the case of *U.S. v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) in support of their argument that the Plaintiffs' claim in this case must fail because it would adversely impact the government's interest in uniform enforcement of the social security number requirement. In *Lee*, the Supreme Court held that a member of the Amish faith was not entitled to an exemption from the requirement that he pay social security taxes required of employers on the basis that payment of those taxes was contrary to his sincerely held religious beliefs. *Lee* is distinguishable from this case in at least two respects. First, the harm to the government that would have resulted from Lee's non-payment of social security taxes would have been immediate in that the funds available for payment of benefits by the Social Security Administration would be reduced whereas in this case any harm to the government resulting from Plaintiffs not providing a social security number for Little Bird of the Snow is, as will be discussed

shortly, speculative only. Also, the Court in *Lee* apparently relied upon the apparent possibility of a tremendous number of claims of religious based objection to payment of taxes creating chaos in the tax system. In this case, as will be discussed below, the Defendants have not shown that there is any likelihood that more than a handful of individuals object on the basis of sincerely held religious beliefs to the social security number requirement challenged in this case. Finally, Justice Stevens suggests in a concurring opinion in *Lee* that the unarticulated standard used to decide that case actually imposes an almost insurmountable burden on a plaintiff in a free exercise case but that such a standard has not been applied in those cases involving a "law intended to provide a benefit to a limited class of otherwise disadvantaged persons," such as laws providing for unemployment compensation. *Lee*, 455 U.S. at 255 n. 2, 102 S.Ct. at 1054 n. 2. Such is the situation in this case.

2. Application of the Test to this Case.

In light of the foregoing, we will consider this case under the reasonable less restrictive alternative standard articulated in our opinion on the parties' motion for summary judgment and explicated in this opinion. Under that standard, we will consider the Plaintiffs' interests as against the government's interest in this particular case as well as the government's interest in the social security number requirement as a general matter.

As noted above, the government's general interest in maintaining the social security number requirement is great. However, that interest does not appear to be threatened by the claim presented in this case because the Plaintiffs' claim appears to be extremely unusual. We are not aware of more than four reported challenges to the social security number requirement. The Defendants presented no evidence that requests for exemption from the requirement have been made by persons other than those involved in the four reported cases. The Defendants have presented no evidence that any more than a handful of people have religious beliefs that would result in a request for an exemption from the social security number requirement. Thus, the Government's general interest in enforcement of the social security number requirement would not appear to be threatened by a holding in favor of the Plaintiffs in this case. We note also that even though virtually all benefit recipients provide their social security numbers to the Defendants, five to ten percent of all payments made under the benefit programs are made in error. As discussed above, we reject the government's argument that the Plaintiffs cannot prevail because the grant of any exception to the social security number requirement is impermissible.

The government's interest in avoiding a grant of an exemption to the social security number requirement to the Plaintiffs in this case is very small. As appears from our findings, the Defendants did not produce any evidence that the grant of such an exemption will require any discrete expenditure of funds or substantial commitment of personnel time. Indeed, the Defendants never pointed out any specific concrete harm that would result if the Plaintiffs prevailed in this case. The testimony presented by the Defendants' witnesses on this question was vague. The Defendants failed to present any evidence regarding the costs incurred or problems encountered by the government following Judge Weinstein's decision in *Stevens v. Berger*, 428 F.Supp. 896 (E.D.N.Y.1977) in which he ordered the government to pay welfare benefits to the Plaintiffs in that case despite their refusal to provide social security numbers. The Defendants also presented no evidence that any harm had resulted from the Defendants' provision of benefits for Little Bird of the Snow in 1982 when the Plaintiffs provided no social security number for her.

It appears to the Court that the harm that the Government might suffer if the Plaintiffs prevailed in this case would be, at worst, that one or perhaps a few individuals could fraudulently obtain welfare benefits. Such a result would obtain only if (1)

Little Bird of the Snow attempted fraudulently to obtain welfare benefits or someone else attempted fraudulently to obtain such benefits using Little Bird of the Snow's name *and* (2) identification procedures available to the Defendants that do not require utilization of a social security number failed to expose the fraud. This possibility appears to the Court to be remote.

The government witnesses contend that the social security number requirement is essential because the social security number is relied upon in comparing files of welfare recipients through computer "cross-matching" programs. These witnesses did not testify, however, that cross-matching could not be performed (and welfare fraud thereby discovered and deterred) without the use of the social security number except in one unusual situation discussed below. Rather, these witnesses testified that cross-matching could be performed but any match between files identified by the computer would be accorded less "weight" than a match involving two files containing identical social security numbers. In other words, if the computer discovered two applications for welfare benefits by an individual with a certain name, absent a social security number or some other identifier, a match would be obtained but would not definitively establish that one applicant is the same as the other, i.e., that fraud was involved. If this problem arises, the government might be faced with a need to perform additional clerical work in order to determine whether the two applicants are indeed the same.

Contrary to the government's implication, the social security number is not essential to avoid the problem alluded to in the preceding paragraph. An applicant for benefits under the programs involved in this case is required to submit not only his name and his social security number but several other identifying factors such as date of birth. Effective cross-matching can be performed on the computer systems currently used by the Defendants when several identifying factors for a particular applicant are typed into the computer, even absent the social security number. Moreover, in this particular case, the Defendants presented no evidence that there was anybody else in the United States with the name Little Bird of the Snow or that any person using the name Little Bird of the Snow (other than Little Bird of the Snow Roy) has applied for welfare benefits.

The only instance of which we are aware in which an individual's failure to provide a social security number might render cross-matching impossible is in the interstate context. Witnesses for the Defendants testified that this is so because different states use different formats for entering people's names into their computer system whereas the social security number is used nationwide and is always a nine digit number. We are not persuaded that cross-matching would be impossible in the interstate context without the social security number. In any event, assuming that such cross-matching is impossible, the possibility that Little Bird of the Snow or some other individual could fraudulently obtain welfare benefits in two different states or in some other interstate context as a result of exempting Little Bird of the Snow from the social security number requirement in this case is extremely remote.

■■■ For all of the foregoing reasons, we conclude that the Plaintiffs' objection to use of a social security number for Little Bird of the Snow is protected under the first amendment such that the Plaintiffs are entitled to an exemption from the social security number requirement.

### F. Relief.

The Plaintiffs seek the following relief. First, they seek an order requiring Defendant Cohen or Defendant Heckler or both to pay to the Plaintiffs the benefits withheld from the Plaintiffs in violation of their first amendment rights. Second, they seek an order enjoining all of the Defendants from denying benefits to the Plaintiffs for Little Bird of the Snow for failure to provide a social security number. Third, they seek an award of damages against Defendants

Cohen and Heckler, in their individual capacities, for injuries caused as a result of their infringement of the Plaintiffs' constitutional rights. Fourth, they seek an order requiring Defendant Heckler in effect to eliminate any reference to or use of the social security number previously established for Little Bird of the Snow. Finally, they seek an award of costs and attorney's fees.

■■■ We will grant the Plaintiffs part of the injunctive relief they seek. We will enjoin the Defendants from denying benefits to the Plaintiffs for Little Bird of the Snow because of the Plaintiffs' failure to provide a social security number for Little Bird of the Snow. Because the Plaintiffs have asserted that they have no present religious objection to the mere past establishment of a social security number for Little Bird of the Snow, we will deny their request that that number be "eliminated".

We will also enjoin Defendant Heckler from using or disseminating the social security number already established for Little Bird of the Snow. We recognize that Defendant Heckler has already provided the number to the Internal Revenue Service and that that single instance of dissemination of the number cannot be undone by any order in this case. Nevertheless, Roy objects to widespread governmental use of the number which, according to Roy's testimony, has not yet occurred.

The Plaintiffs request that any injunction(s) granted them by the Court not be limited in time. Alternatively, in response to the Defendants' concern that the Government's interest in requiring Little Bird of the Snow to use a social security number will be far greater when Little Bird of the Snow reaches age 16 than at present, the Plaintiffs request that any injunctions extend until Little Bird of the Snow's 16th birthday. We will order that the injunction extend only to Little Bird of the Snow's 16th birthday.

■■■ With regard to the Plaintiffs' request for damages, we are not aware of any authority for the relief requested by the Plaintiffs. As discussed in our prior opinion in this case, an award of damages against Defendant Cohen is barred by the Eleventh Amendment guarantee of sovereign immunity to the states. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). With regard to an award of damages against Defendant Heckler, we are not persuaded by the authorities cited by the Plaintiffs that we have the authority to grant such an award. Moreover, even assuming that such power exists, it appears that Defendant Heckler is immune from the Plaintiffs' claim for damages because her conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Finally, we reject the Plaintiffs' assertion that the Defendants should be held liable in their individual capacities for their action in withholding benefits to the Plaintiffs. The Defendants acted pursuant to a clearly-expressed statutory requirement and we therefore see no basis for holding them individually liable. Although we have concluded that we lack the power to award to the Plaintiffs the withheld benefits, we reach this conclusion reluctantly in that the Plaintiffs were entitled to and therefore arguably should receive the benefits that were withheld between October 1982 and the present.

We will reserve decision on the Plaintiffs' request for attorney's fees until such time as the Plaintiffs submit a motion for attorney's fees which conforms to the requirements of the Court of Appeals and as set forth in the practice order issued in this case. We express no view as to the merit of such a request.

### IV. Conclusions of Law.

1. The Plaintiffs' refusal to provide a social security number for Little Bird of the Snow is based upon a religious belief.

2. Roy's religious belief is sincerely held.

3. By requiring Roy to violate his religious beliefs as a condition of receiving welfare benefits, the Defendants place a

substantial burden upon Roy's free exercise of his religion.

4. The Defendants' interests can be satisfied by reasonable less restrictive means which do not infringe upon Roy's religious beliefs.

5. The Defendants' denial of cash assistance and medical assistance, and threatened denial of food stamps for Little Bird of the Snow violate Roy's rights under the First, Fifth and Fourteenth Amendments to the United States Constitution.